Brian C. Butler, OSB 981903
Assistant Federal Public Defender
15 Newtown, Medford, OR 97501
(541) 776-3630 Fax: (541) 776-3624
brian_butler@fd.org

Kurt David Hermansen, CA Bar # 166349
Assistant Federal Public Defender
859 Willamette Street, Suite 200
Eugene, Oregon 97401
(541) 465-6937 Fax: (541) 465-6975
kurt_hermansen@fd.org

Attorneys for Defendant

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CARLOS MILLER-SMITH,<br><br>Defendant. | Case No. 3:25-cr-00480-AB-1<br><br>MOTION TO RELEASE DEFENDANT TO RESIDENTIAL TREATMENT |

Table of Contents

I. Introduction ........ 3

II. Background ........ 3

III. Legal authority ........ 8

A. Reopening of Detention Hearing ........ 8

B. Crime Victim's Right Act (CVRA) ........ 9

IV. Analysis ........ 10

A. The government failed to notify Shirley Allen and Laura Sahme of Miller-Smith's detention hearings. ........ 10

B. New information from discovery demonstrates that the incident was accidental and a result of acute alcohol intoxication. ........ 12

C. Miller-Smith cannot receive the alcohol abuse treatment he needs while in custody. ........ 12

V. Conclusion ........ 13

## I. INTRODUCTION

The defendant, Carlos Miller-Smith, through counsel Brian Butler and Kurt Hermansen, respectfully moves this Court to authorize Miller-Smith's release to residential treatment. Although this Court heard arguments regarding Miller-Smith's eligibility for pretrial release on November 13, 2025, that hearing was flawed because the government failed to notify at least two victims, Shirley Allen (Shirley) and Laura Sahme (Laura), about the previous detention hearings, depriving them of the opportunity to testify. Additionally, newly acquired discovery supports the conclusion that the shooting was accidental and a result of Miller-Smith's acute intoxication level. There is no indication that the shooting was intentional. Finally, Miller-Smith is amenable to alcohol abuse treatment that cannot be accommodated while he remains in custody. Therefore, Miller-Smith requests that the Court authorize his release to a residential treatment facility approved by pretrial services.

## II. BACKGROUND

Initially, Miller-Smith was charged in a sealed complaint with Involuntary Manslaughter and Assault Resulting in Serious Bodily Injury.[1] Miller-Smith was then charged via indictment with Second Degree Murder under 18 U.S.C. §§ 1111 and 1153 for the shooting of Sammy Bruised Head on

[1] ECF 1.

October 25, 2025.[2] Miller-Smith was detained by Magistrate Judge Beckerman following a First Appearance on October 29, 2026.[3] During the first detention hearing on November 4, 2025, Magistrate Judge Jeffrey Armistead ordered Miller-Smith to be released to residential treatment pending an available treatment bed.[4] The government moved to revoke Judge Armistead's release order on November 5, 2025, and counsel for Miller-Smith responded to the government's motion on November 10, 2025.[5] On November 13, 2025, following oral argument on the motions (the second detention hearing), this Court revoked Judge Armistead's release order.[6]

The victim's husband, Clinton Bruised Head, testified at the second detention hearing and argued in favor of Miller-Smith's detention.[7] Sammy Bruised Head's brother, Kenneth Allen, also testified in favor of detention.[8] In support of their motion to revoke the release order, the government stated that "there was another witness who reported to police that they were afraid of the defendant."[9] This was a reference to statements made by Miller-Smith's sister,

[2] ECF 26.
[3] ECF 6.
[4] ECF 12.
[5] ECF 14; ECF 18.
[6] ECF 16; ECF 23.
[7] ECF 25.
[8] ECF 25.
[9] ECF 25 Tr. at 7-8.

Laura, who was present at the scene shortly after the shooting, but was not invited to the detention hearing.

During the hearing, the Court expressed concern that "it's difficult for me… to be able to assess what needs to happen to neutralize the danger if I'm not really sure what happened and I'm not really sure what caused this terrible tragic incident to happen."[10] Defense counsel Megha Desai, who has since withdrawn from the case, agreed that "I don't know under what circumstances this incident happened" and that "[w]e're still trying to learn that."[11]

In its order, this Court weighed multiple factors in favor of release, including Miller-Smith's lack of criminal history, long ties to the Warm Springs community, stable employment, compliance with law enforcement, acknowledgement of the seriousness of the offense, and a desire to work on his problems with alcohol.[12] However, the Court revoked the release order based on the nature of the offense, weight of the evidence, and "evidence that at least some people in the community fear the Defendant or at least were in fear of him at the time of the incident."[13] The Court concluded that "the current charge

---

[10] ECF 25 at 22.
[11] ECF 25 at 24.
[12] ECF 24.
[13] ECF 24.

is simply too serious and presents too great a risk to the community *when no one presently knows why this incident took place*."[14]

Since the Court ordered Miller-Smith to be detained, new information has come to light. The government failed to notify Sammy Bruised Head's sister, Shirley, and Miller-Smith's sister, Laura, about either detention hearing. Defense counsel was unaware that the government had not contacted Shirley or Laura about the detention hearings, assuming that they would have done so. Shirley supports Miller-Smith's release because "that is the Native way." For her part, Laura wishes to clarify that she is *not* afraid of Miller-Smith, and that the government used her statements out of context at the second detention hearing.

Information disclosed by the government through discovery confirms that the shooting was a tragic accident resulting from a combination of Miller-Smith's intoxication level and access to firearms. There was no motive, ill intent, or history of violence. In Officer Michael Cofer's body-worn camera (BWC) footage from that evening, Laura said, "I'm really worried about my brother [Miller-Smith] because I know he didn't mean that. I know it wasn't intentional."[15] Laura confirms that when she arrived at the scene of the shooting, Miller-Smith told her, "It was an accident." Miller-Smith apologized

[14] ECF 24 (emphasis in original).
[15] Ex. A at 21:59:55.

repeatedly throughout the footage, both to officers and to Shirley.[16] At one point, Laura tells Officer Cofer that Miller-Smith is "drunk" and "out of it."[17] The FBI tested Miller-Smith's BAC at about 1:00 a.m. on the night of the shooting, revealing a BAC of 0.29.[18] His BAC at the time of the incident would have been approximately 0.334 to 0.399. The presumptive legal limit for driving is 0.08.

Finally, Miller-Smith needs residential alcohol abuse treatment and cannot receive the level of care that he needs while in custody. Miller-Smith is currently incarcerated at the Yamhill County Jail in McMinnville, Oregon. The facility offers limited, sporadic Alcohol Anonymous meetings run by a volunteer, which Miller-Smith attends whenever possible. However, these limited and sporadic meetings are not sufficient to address Miller-Smith's profound struggle with alcohol dependency, which began when he was eleven or twelve years old. Miller-Smith's most recent ASAM report from September 5, 2026, recommended a Care Level of 3.5. According to the ASAM Placement Criteria, clinically managed high-intensity residential treatment services would be the "least restrictive level of care capable of adequately addressing Miller-Smith's current treatment needs."[19]

---

[16] Ex. A at 20:48:08-20:48:31
[17] Ex. A at 20:57:02
[18] Ex. B
[19] Ex. C

Miller-Smith hopes to attend residential treatment at Willamette Family Treatment Services in Eugene, Oregon, or a similar program that can address his unique substance abuse and mental health needs. This program will provide him with the comprehensive treatment that he needs to recover from alcohol addiction and continue his path towards rehabilitation.

## III. LEGAL AUTHORITY

### A. Reopening of Detention Hearing

The Bail Reform Act of 1984 permits a judge to determine whether a defendant is released pending trial. 18 U.S.C. § 3142(a). The judge may release a defendant "on a condition or combination of conditions" to ensure the defendant's appearance before the court and the safety of the community. *Id.* The statute mandates the "least restrictive further condition, or combination of conditions, that… will reasonably assure the appearance of the person as required and the safety of any other person and the community." *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985). A judge may order a defendant to be detained before trial only when "no condition or combination of conditions will reasonably assure the safety of any other person and the community." 18 U.S.C. § 3142(f). Even in cases where the defendant has the burden to present evidence rebutting the presumption of detention, the burden of persuasion remains with the government. See *United States v. Dillon*, 938 F.2d 1412 (1st Cir. 1991).

A detention hearing may be reopened "at any time before trial" if the defendant demonstrates that "information exists that was not known to the [defendant] at the time of the hearing and that has a material bearing" on detention. 18 U.S.C. § 3142(f).

**B. Crime Victim's Right Act (CVRA)**

The Crime Victims' Rights Act (CVRA) defines a "crime victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense." 18 U.S.C. § 3771(e)(2)(A). In cases where the alleged victim has passed away, their family members are afforded rights as victims under the CVRA. See *In re Mikhel*, 453 F.3d 1137 (9th Cir. 2006). The CVRA provides crime victims with "[t]he right to reasonable, accurate, and timely notice of any public court proceeding… involving the crime or of any release or escape of the accused." 18 U.S.C. § 3771(a)(2). Victims also have "the right to be reasonably heard at any public proceeding in the district court involving release," such as a detention hearing. 18 U.S.C. § 3771(a)(4). The statute ensures that victims have a "right not to be excluded from any such public court proceeding" unless the court is presented with clear and convincing evidence that the victims' testimony would be altered by other testimony in the proceedings. 18 U.S.C. § 3771(a)(3). Even under those circumstances, "the court shall make every effort to permit the fullest attendance possible by the victim." 18 U.S.C. § 3771(b)(1).

The Ninth Circuit has interpreted the CVRA to provide crime victims with "an indefeasible right to speak, similar to that of the defendant." *Kenna v. U.S. Dist. Ct. for C.D.Cal.*, 435 F.3d 1011 (9th Cir. 2006). The statute's legislative history supports that "the very purpose of [§ 3771(a)(4)] is to allow the victim to appear personally and directly address the court." *Id.* at 1015. This means that "[o]nly if it is not practical for the victim to speak in person or if the victim wishes to be heard by the court in a different fashion should this provision mean anything other than an in-person right to be heard." *Id.*

## IV. ANALYSIS

### A. The government failed to notify Shirley Allen and Laura Sahme of Miller-Smith's detention hearings.

As Sammy Bruised Head's sister, Shirley is a victim under the meaning of the CVRA. 18 U.S.C.A. § 3771(e)(2)(A). Laura is also a victim under the meaning of the CVRA. As Shirley's best friend and Miller-Smith's sister, her life has been irrevocably harmed by the tragic events of October 25, 2025. She has had to grieve the loss of Sammy Bruised Head, her brother's detention, and the resulting discord and conflict between the two families. Therefore, as individuals "directly and proximately harmed" by the incident, both women have the "right to reasonable, accurate, and timely notice of any public court proceeding, or any parole proceeding, involving the crime or of any release or escape of the accused." 18 U.S.C. § 3771(a)(2). They also have "the right to be reasonably heard at any public proceeding in the district court involving

release." 18 U.S.C. § 3771(a)(4). Finally, they have the right "right not to be excluded from any such public court proceeding." 18 U.S.C. § 3771(a)(3).

The government did not provide Shirley and Laura with "reasonable, accurate, and timely notice" of the detention hearings, and therefore deprived them of their rights to be "reasonably heard" at the proceedings. This omission deprived both victims of their "right not to be excluded from any such public court proceeding" in contravention of the CVRA.

The fact that both victims are willing to advocate for Miller-Smith's release is new information that has a material bearing on the Court's determination of whether Miller-Smith's release would pose a danger to the community under 18 U.S.C. § 3142(f). The government invoked Laura's out-of-context statement about her fear of Miller-Smith at the second detention hearing, and the Court cited this among the factors weighing in favor of detention.[20] Therefore, providing Laura an opportunity to clarify her statement would have a material bearing on the decision to keep Miller-Smith in detention.

Finally, Shirley and Laura were present at the scene of the shooting and can provide context to clarify how and why the incident took place, which would alleviate the uncertainty that the Court expressed when detaining

[20] ECF 24.

Miller-Smith: "it's difficult for me… to be able to assess what needs to happen to neutralize the danger if I'm not really sure what happened."[21]

**B. New information from discovery demonstrates that the incident was accidental and a result of acute alcohol intoxication.**

Although ambiguities remained about Miller-Smith's motive during the last detention hearing, the new information in discovery clarifies that Miller-Smith's actions were the accidental result of acute alcohol intoxication and access to firearms. Officer Cofer's BWC footage shows that Miller-Smith did not intend to shoot Sammy Bruised Head, that he was drunk and "out of it," that he was immediately apologetic for his actions, and that he was fully cooperative with law enforcement after the incident. Although the nature of the offense remains serious, this evidence dispels any concern that Miller-Smith has a propensity towards violence. Instead, the incident was a tragic and incidental result of a severe alcohol addiction that has remained untreated throughout Miller-Smith's life.

**C. Miller-Smith cannot receive the alcohol abuse treatment he needs while in custody.**

During the second detention hearing, the Court expressed concern about which conditions or combination of conditions would keep the community safe because it was unclear why the incident occurred. Any potential danger to the

[21] ECF 25 Tr. at 22.

community will be ameliorated by Miller-Smith's release into an intensive, culturally informed, inpatient alcohol abuse treatment program. Willamette Family Treatment is in Eugene, Oregon, hours away from where the shooting occurred on the Warm Springs Reservation. Miller-Smith has reflected on how his long-standing alcohol addiction contributed to this tragic incident, and he is ready to proceed with treatment. He simply cannot effectively treat his alcoholism with the sporadic, limited resources currently available to him in custody. The community will be safer in the long term when Miller-Smith receives the treatment that he needs to recover from the underlying problems that led to this offense.

## V. CONCLUSION

For the above stated reasons, Carlos Miller-Smith respectfully requests that this Court reopen the detention hearing and order his release to an in-patient alcohol abuse treatment program.

RESPECTFULLY SUBMITTED October 19, 2026.

*s/Brian Butler*
Brian Butler, Assistant Federal Public Defender
Kurt David Hermansen, Assistant Federal Public Defender
Attorneys for Carlos Miller-Smith

# EXHIBIT A

Submitted for Filing Under Seal

SUBMITTED TO COURT ON THUMB DRIVE

MILLER_1764 Cofer's Body Worn Camera Video

# EXHIBIT B

Submitted for Filing Under Seal

# EXHIBIT C

Submitted for Filing Under Seal